IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SOPHIA AIRA, et al.

　　　　Plaintiffs,

　　　　v.

CITY OF ATLANTA, et al.

　　　　Defendants.

CIVIL CASE NO.:
1:24-cv-03344-MHC

## CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Sophia Aira, Gina Dickhaus, Laurel Leckert, Gillian Maurer, Melanie Noyes, and Abby Walter in the above styled action and file this their Consolidated Amended Complaint for Damages pursuant to this Court's Order dated November 18, 2024.

This is a civil rights action under 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and Georgia law. The Plaintiffs allege that they were illegally and unconstitutionally detained and arrested by Defendant Officers Jessica Bruce, Anthony Ewing, Jamar Reed, John

Patton, Deronald Davis, James Fraser, and Sidney Smith, of the City of Atlanta Police Department and Georgia State University Police Department, and maliciously prosecuted in violation of the Fourth Amendment of the United States Constitution and Georgia law. All defendants – including the City of Atlanta - conspired to deprive Plaintiffs of their constitutional rights. Plaintiffs also allege that they were arrested and prosecuted in retaliation for the exercise of their First Amendment rights, and that Defendant City of Atlanta through Major Jessica Bruce conspired in the false arrest, malicious prosecution, and first amendment retaliation, that is the subject of this suit. Finally, Plaintiffs allege that a final policy maker within the City of Atlanta – Major Jessica Bruce - ordered the arrest of the Plaintiffs and insisted on their prosecution as a result of Plaintiffs' First Amendment protected activity.

**PARTIES**

1.

Plaintiff Sophia Aira is a resident of the State of Illinois, Plaintiff Laurel Leckert is a resident of the State of New York, and Plaintiffs Gina Dickhaus, Gillian Maurer, Melanie Noyes, and Abby Walter are residents of the State of

North Carolina.  All Plaintiffs are United States citizens, and over the age of eighteen.

2.

Defendant Jessica Bruce is an Officer employed by the City of Atlanta Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Jessica Bruce may be served at this address. At all times relevant to this lawsuit, Defendant Jessica Bruce acted under the color of law. Defendant Jessica Bruce is sued in his individual capacity.

3.

Defendant Anthony Ewing is an Officer employed by the Georgia State University Police Department. The headquarters of the Georgia State University Police Department are located at 15 Edgewood Ave SE, Atlanta, GA 30303 in Fulton County, Georgia. Defendant Anthony Ewing may be served at this address. At all times relevant to this lawsuit, Defendant Anthony Ewing acted under the color of law. Defendant Anthony Ewing is sued in his individual capacity.

4.

Defendant Jamar Reed is an Officer employed by the Georgia State University Police Department. The headquarters of the Georgia State University Police Department are located at 15 Edgewood Ave SE, Atlanta, GA 30303 in Fulton County, Georgia. Defendant Jamar Reed may be served at this address. At all times relevant to this lawsuit, Defendant Jamar Reed acted under the color of law. Defendant Jamar Reed is sued in his individual capacity.

5.

Defendant John Patton is an Officer employed by the Georgia State University Police Department. The headquarters of the Georgia State University Police Department are located at 15 Edgewood Ave SE, Atlanta, GA 30303 in Fulton County, Georgia. Defendant John Patton may be served at this address. At all times relevant to this lawsuit, Defendant John Patton acted under the color of law. Defendant John Patton is sued in his individual capacity.

6.

Defendant Deronald Davis is an Officer employed by the Georgia State University Police Department. The headquarters of the Georgia State University

Police Department are located at 15 Edgewood Ave SE, Atlanta, GA 30303 in Fulton County, Georgia. Defendant Deronald Davis may be served at this address. At all times relevant to this lawsuit, Defendant Deronald Davis acted under the color of law. Defendant Deronald Davis is sued in his individual capacity.

7.

Defendant James Fraser is an Officer employed by the Georgia State University Police Department. The headquarters of the Georgia State University Police Department are located at 15 Edgewood Ave SE, Atlanta, GA 30303 in Fulton County, Georgia. Defendant James Fraser may be served at this address. At all times relevant to this lawsuit, Defendant James Fraser acted under the color of law. Defendant James Fraser is sued in his individual capacity.

8.

Defendant Sidney Smith is an Officer employed by the Georgia State University Police Department. His badge / unit number is 349. Defendant Smith's full first name is currently unknown and will be corrected at a later date. The headquarters of the Georgia State University Police Department are located at 15 Edgewood Ave SE, Atlanta, GA 30303 in Fulton County, Georgia. Defendant

Sidney Smith may be served at this address. At all times relevant to this lawsuit,

Defendant Sidney Smith acted under the color of law. Defendant Sidney Smith is

sued in his individual capacity.

9.

Defendant City of Atlanta ("the City") is a political subdivision of the State

of Georgia, which has the capacity to sue and be sued. The City can be served at:

55 Trinity Ave. SW, Atlanta GA 30303. At all times relevant to this lawsuit,

Defendant City of Atlanta acted under the color of law.

10.

All defendants reside in the Northern District of Georgia.

**JURISDICTION AND VENUE**

11.

This case presents a federal question and this Court has subject matter

jurisdiction under 28 U.S.C. § 1331.

12.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an

action to redress a deprivation of rights guaranteed by the United States

Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an

action to redress a deprivation of rights guaranteed by the laws and the

Constitution of the State of Georgia.

13.

This Court has personal jurisdiction of the Defendants under 28 U.S.C. §

1367 and GA. CONST., art. I, § 1, ¶¶ V, XIII.

14.

Venue is proper in the Northern District of Georgia under 28 U.S.C. §

1391(b) because all actions complained of occurred within the boundaries of this

judicial district and Defendants reside within this district.

15.

All of the parties herein are subject to the jurisdiction of this Court.

16.

Attorney's fees are authorized under 42 U.S.C. § 1988.

**FACTUAL ALLEGATIONS**

17.

On July 29, 2022 a group of approximately 50 individuals arrived in the general area of the Georgia State University Convocation Center located at 455 Capitol Avenue in Atlanta. The individuals were there to protest against the construction of the Atlanta Police Training Facility also referred to as the Cop City.

18.

The Atlanta Public Safety Training Center, also known as "Cop City," is a controversial project and has been the subject of local, national, and international media coverage.

19.

The protesters walked towards the Convocation Center building which – although almost completed – was at the time still technically under construction and not open to the public. There were no signs in the area, however, that would alert the public that the building was still under construction or that the public was not allowed to enter. While approaching the building the protesters were chanting and clapping.

20.

Some of the protesters entered the building and some of the protesters
remained outside of the building on the sidewalk. The protesters that entered the
building walked through some of the areas while chanting and clapping and
encountered a few construction workers inside of the building. Construction
workers told protesters to exit the building which the protesters did. Protesters that
entered the building spent no more than two or three minutes inside the building.
Plaintiffs Gina Dickhaus, Gillian Maurer, Melanie Noyes, and Abby Walter
specifically allege that they did not enter the building.

21.

Upon exiting the building the protesters encountered Defendant Anthony
Ewing, a Georgia State University police officer in his uniform. Defendant Ewing
told the protesters to "Get out of here!" which the protesters did. Defendant Ewing
did not stop the protesters at the time and protesters left the area.

22.

Some time later Defendant John Patton engaged in search of and pursuit of
the protesters and spotted a burgundy Subaru on Martin Street approximately half a

mile from the Convocation Center. The Subaru was parked and not moving at the time and sitting inside were Abby Walter, Gillian Maurer, Melanie Noyes and Sophia Aira. Defendant Patton immediately detained Abby Walter, Gillian Maurer, Melanie Noyes and Sophia Aira with the assistance of GSU Police Officer Sidney Smith and others.

23.

A short time later Laurel Leckert, Gina Dickhaus and Raymond Surya were also detained nearby pursuant to the direction of Defendant Patton.

24.

All seven detained individuals were handcuffed and made to sit on the curb in the hot sun for several hours while other law enforcement agencies arrived on the scene and allegedly conducted investigation and/or other actions.

25.

While not all of the communications between and within various law enforcement agencies are known to the Plaintiffs at this time the following is known as alleged in the following paragraphs.

26.

One of the "other" law enforcement agencies that arrived on the scene during the time of detention was the City of Atlanta Police Department. Specifically Major Jessica Bruce – who currently serves as a Deputy Chief of the City of Atlanta Police Department arrived at the scene and engaged in conversation with Officer James Fraser as well as other officers. Defendant Bruce urged the GSU Officers to stretch the charges against detained individuals to help City of Atlanta fight the opponents of "Cop City." Specifically – after an unidentified Georgia State University police officer stated that the conduct of protesters was "not really chargeable" Defendant Bruce stated: "a … anything we can … anything guys … anything we can get would help us out tremendously with this group … I know it's a reach." After this statement Defendant Frasier turned off his body camera to conceal the remainder of the conversation.

27.

In an effort to justify the detention initiated by Defendant Patton Defendant Jamar Reed reached out to construction workers at the Convocation Center. He asked two workers to come with him to the site where the individuals were

detained to conduct a show-up. Defendant Reed explained to the construction workers that police has caught individuals who went inside the Convocation Center but needed the construction workers as witnesses. When speaking with the construction workers Jackson Bussey and Moses Paige Defendant Reed stated among other things: "Yea - we got them. We just want to bring you all over here ... so you all can ID them for us," and "...we will need some information ... just so we can say you all verified ... y'all saw them in the building ... these are the ones we have..." Defendant Reed then drove Bussey and Paige to Martin Street where individuals who were detained were located.

28.

Rather than having Bussey and Paige take a good look at each detained individual separately - Reed instead stopped his police vehicle approximately 50 feet away from detained individuals who were sitting on the curb and had Bussey and Paige state that "that's them" upon which Reed drove Bussey and Paige back to the Convocation Center without Bussey and Paige ever exiting the police vehicle when allegedly identifying the protesters.

29.

To the extent that Brasfield & Gorrie employees Bussey and Paige made any inculpatory statements they were made at Defendant Reed, Defendant Deronald Davis', and others' prompting.

30.

At no point did Bussey and Paige indicate that there was any property damage done inside the Convocation Center by the protesters.

31.

At all times all of the defendants knew the purpose and intent behind the entry into the Convocation Center by those protesters who actually entered. That intent was to protest against the construction of the police training facility and that intent was plainly obvious from protesters' actions. At no time was there any evidence or information upon which any of the defendants could possibly base a belief that the intent possessed by the protesters was to commit a felony inside the building.

32.

At no time was there any evidence or information upon which any of the

defendants could possibly conclude that any property damage was done inside the building by the protesters.

33.

Because defendants did not like the political message that the protesters were advocating defendants conspired to charge all detainees with crimes they knew protesters did not commit - as follows: Criminal Damage To Property in the 2nd Degree - Felony OCGA 16-7-23, Burglary in the Second Degree - Felony, OCGA 16-7-1(c), and Obstruction of Law Enforcement Officer - Misdemeanor, OCGA 16-10-24. After detention lasting several hours detainees were placed under arrest for said charges and booked. Defendant Ewing wrote citations for this plaintiff and swore warrants for arrest against this plaintiff for each of the above charges.

34.

Defendant Ewing knew that the information presented to the magistrate to obtain warrants was false or should have known that it was false.

35.

Defendant Ewing conspired with other defendants to detain, arrest, and

charge the detained protesters with crimes they did not commit and despite the fact that all defendants knew or should have known that none of the detained individuals committed any crime under the law.

36.

Contrary to the allegations in the warrant affidavits none of the individuals protesting caused any damage and did not obstruct any law enforcement officers. Officer Ewing appeared on the scene of the Convocation Center when the protesters were in the process of exiting at which time Officer Ewing gave them a verbal command to "Get out of here." All protesters complied with that command.

37.

Likewise there was no arguable probable cause to arrest or charge any of the protesters with any other crime. For example none of the protesters could have been arrested or charged with criminal trespass since at the time of their entry there were no posted signs and they have not received a criminal trespass warning by an owner or an authorized person. Rather - the protesters (even those that actually entered the Convocation Center) exited the building within minutes of their entry and immediately after they were told by the workers to leave. Protesters then

immediately complied with the order of Defendant Ewing to depart the area which they did. Nevertheless protesters were then pursued and detained approximately half a mile from the Convocation Center, arrested and charged as described above.

38.

In their zeal to stamp out any dissent or speech not favorable to the construction of the training center ("Cop City") defendants also arrested an AJC reporter Benjamin Hendren who was never in the vicinity of the protest at the Convocation Center – but instead arrived at the site on Martin Street to film the events after the protesters were already detained. Hendren's arrest is subject of a pending lawsuit in this Court (Case 1:24-cv-02921-TWT).

39.

Abby Walter, Gillian Maurer, Melanie Noyes, Sophia Aira, Laurel Leckert, Gina Dickhaus, and Raymond Surya were all indicted in the Superior Court of Fulton County on the above mentioned charges of Criminal Damage To Property, Burglary, and Obstruction of Law Enforcement Officer. All of them were offered a pretrial diversion by the District Attorney's office and all except Laurel Leckert and Gina Dickhaus accepted that offer. Those who accepted the pretrial diversion

offer expect their case to be dismissed in the next few months. Laurel Leckert and

Gina Dickhaus did not accept the pretrial diversion and instead filed a motion with

the Superior Court of Fulton County to suppress the show-up identification which

motion was granted. Following the grant of the motion to suppress the cases

against Laurel Leckert and Gina Dickhaus were dismissed on October 24, 2024.

40.

As such Plaintiff Laurel Leckert and Gina Dickhaus' cases were favorably

terminated on October 24, 2024. Plaintiffs Sophia Aira, Gillian Maurer, Melanie

Noyes, and Abby Walter expect that their criminal cases will be formally and

favorably resolved in the next few months as those Plaintiffs are currently in the

process of completing the pretrial diversion. Those Plaintiffs further allege that as

of the date of this complaint they have completed all of the diversion requirements

and therefore the completion of their diversion and dismissal of their criminal

charges is just a matter of formality at this point.

**COUNT I**
**42 U.S.C. § 1983: Unlawful Seizure in violation of the Fourth Amendment**
**(As to all Defendants except City of Atlanta)**

41.

Paragraphs 1 through 40 are hereby re-alleged as if fully pled herein.

42.

The conduct of Defendants in causing and procuring the arrest and detention of Plaintiffs without arguable probable cause constituted an unreasonable seizure of their persons in violation of the Fourth Amendment. Defendant Bruce caused that seizure by means of using her authority as a high ranking officer of the City of Atlanta Police Department while the GSU Police Officers felt obligated to follow her lead and comply with her urging to fabricate charges against all Plaintiffs given that Atlanta Police Department plays one of the leading roles in a joint task force created to combat the opposition against building of the training center.

43.

The law being clearly established in 2022 that an officer of the state cannot cause someone to be arrested and prosecuted without arguable probable cause, Defendants are not entitled to qualified immunity.

## COUNT II
## 42 U.S.C. § 1983: Malicious Prosecution in violation of the Fourth Amendment
## (As to all Defendants except City of Atlanta)

44.

Paragraphs 1 through 40 are hereby re-alleged as if fully pled herein.

45.

Defendants caused a criminal prosecution to be initiated against Plaintiffs for the offenses described above.

46.

Defendant Ewing not only caused the prosecution to be initiated, and arrest to be executed, but he caused the prosecution to continue based on his arrest warrant affidavit and police report such that all Plaintiffs had to endure criminal cases which have (or are about to) terminate in their favor. Other defendants are liable for said prosecution due to conspiring with Defendants Ewing and Bruce to arrest and prosecute all Plaintiffs without arguable probable cause and in retaliation for their speech.

47.

Defendants knew that there was no probable cause to support the charges against Plaintiffs, but they persisted in initiating, participating in, and assisting with that prosecution despite the complete lack of probable cause.

48.

Said prosecution was based upon statements by Defendants that were either knowingly false or made with reckless disregard for the truth.

49.

Accordingly, said prosecution was carried on maliciously and without probable cause, and has (or is about to be) terminated in Plaintiffs' favor. The prosecution was brought in bad faith and without a reasonable expectation of obtaining a valid conviction as all defendants knew that there was no probable cause for any of the charges – yet conspired to fabricate the charges because this will help Defendant Bruce and The City "tremendously" with "this group." And "with this group" they mean the opponents of the City of Atlanta's Public Safety Training Facility.

50.

The law being clearly established in 2022 that an officer of the state cannot knowingly make false statements in order to cause someone to be prosecuted for an offense that is not supported by probable cause, Defendants are not entitled to qualified immunity.

**COUNT III**
**Municipal Liability**
**(As to Defendant City of Atlanta)**

51.

Paragraphs 1 through 40 are hereby re-alleged as if fully pled herein.

52.

The City is liable under the Monell doctrine because there was a decision by a final policy maker to arrest all Plaintiffs or to conduct arrests in cases such as Plaintiffs', as well as to press false charges against Plaintiffs.

53.

The City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights which

includes violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015.

54.

The City also routinely arrests protesters under the pretext of violating pedestrian in the roadway laws with numerous instances of such arrests occurring during 2020 protests, a mass arrest on January 6, 2021 that is the subject of a pending lawsuit before this Court (Baker v. City of Atlanta et al. 1:21-cv-04186-MLB) where 19 protesters were corralled and arrested for pedestrian in the roadway within minutes of starting to protest, and another mass arrest in May of 2022 when a number of Stop Cop City protesters were arrested in Inman Park and also charged with pedestrian in the roadway. Baker case involved an order given by a high ranking officer to arrest all protesters on the scene. There is an official policy or directive by final policy maker(s) within the City of Atlanta to engage in practice of arresting protesters under the pretext of violating pedestrian in the roadway laws and the City – if not deliberately promoting this policy – is at the very least deliberately indifferent to it.

55.

Another example of an arrest of a protester under the pretext of violating pedestrian in the roadway laws occurring during 2020 protests referred to above is a case pending in this Court styled Schilling v. Doherty, Case No.: 1:22-cv-03772-MLB. In this case a high-ranking officer Lieutenant Kevin Knapp who was in charge of the City of Atlanta police unit at the scene singled out several individuals from a crowd of protesters by pointing them out to other APD officers, identifying them as the ones that should be arrested by saying: "This one has to go, this one has to go…" while pointing at individual protesters to be arrested. There was no indication or explanation on behalf of Lieutenant Knapp as to why those individuals should be arrested. Some time after this identification for the purpose of the arrest Donovan Schilling was arrested under the pretext of an alleged violation of pedestrian in the roadway statute which allegedly occurred after the above mentioned identification and thus could not possibly have formed a basis for Lieutenant Knapp's singling out Mr. Schilling for arrest. Schilling was arrested by Lieutenant Knapp and officer Michael Doherty. Schilling sued alleging – inter alia – first amendment retaliation and the case is currently pending in this Court.

23

Lieutenant Knapp has since been promoted to Captain.

There are numerous other instances of similar pretextual arrests of protesters for pedestrian in the roadway violations from 2020 protest period that further discovery will reveal.

56.

A high ranking officer in the above mentioned Baker case was Lieutenant Gary Harper. Harper has since been promoted to Major and ultimately to a Deputy Police Chief. A first amendment retaliation claim has likewise been brought in Baker case.

57.

The above referenced Inman Park mass arrest from May of 2022 occurred on May 14, 2022 in Inman Park – a public park. This mass arrest of approximately 15 individuals followed a different "Stop Cop City" Protest and was a carefully executed action where only those protesters who were deemed more vocal / more dedicated to the cause were targeted out of a much larger group of protesters. Those protesters were ultimately arrested in a public park where they could not have possibly been violating pedestrian in the roadway laws. Indeed all but one of

the May 14, 2022 arrestees had their charges dismissed, and the sole remaining one

is currently awaiting an accusation in the State Court of Fulton County but has not

been accused to date.

58.

Related to the May 14, 2022 arrests and on the same day were the arrests of

Melanie Silverstein, Ahley Dixon and Ryan Michael Seal. Dixon and Silverstein

were arrested on a public sidewalk while walking home from the protest and

charged with pedestrian in the roadway. Dixon and Silverstein were singled out by

Major Jeff Cantin because one of them was carrying a "Stop Cop City" sign. Dixon

and Silverstein were arrested by Major Cantin who upon information and belief

was assisted by other officers in arresting the two. Dixon's and Silverstein's

charges were likewise dismissed.

59.

Ryan Michael Seal was a reporter who was arrested in Inman Park on May

14, 2022 on pedestrian in the roadway charges and was transported to the City of

Atlanta Detention Center. There Mr. Seal was released without charges. However,

his reporter's notebook was confiscated and never returned. Upon information and

belief Mr. Seal was arrested because he was deemed to be a part of the "Stop Cop City" movement and because it was expected that his notebook would yield valuable intelligence about the movement. In other words Mr. Seal was arrested because of his First Amendment protected activities and in retaliation for those activities.

60.

The complaint of Michael Watchulonis in <u>Watchulonis v. City of Atlanta</u> 1:23-cv-2204-TCB - yet another case pending in this Court – alleges First Amendment violations surrounding the detention of Mr. Watchulonis – a reporter – where Mr. Watchulonis was interrogated by above mentioned Major Jeff Cantin and a GBI agent Mike Carter, threatened with arrest if he does not delete his footage, and then released without charges. Said complaint contains a long list of First Amendment violations by the City of Atlanta of the right to film described therein which are hereby incorporated by reference in order to save space and cut down on the verbosity of the present complaint.

61.

The above described numerous recent instances of pretextual arrests of

protesters on pedestrian in the roadway charges, as well as more broad examples of

First Amendment violations committed by members of APD and with full

knowledge of Defendant City of Atlanta (as described in more detail in

Watchulonis complaint) show deliberate indifference by the City as to the need to

properly train officers on First Amendment protections generally and as to

illegality of using pedestrian in the roadway charges as a pretext to retaliate and /

or attempt to suppress protesters' speech. Had officers been properly trained on the

first amendment protections as it comes to protests the constitutional violations

alleged in the present case would not have occurred. The involvement of the high

ranking officers in the above mentioned violations (Lieutenant, Captain and Major)

and the fact that said officers are routinely promoted subsequent to those violations

show that the City has full knowledge (let alone constructive knowledge) of those

violations and is not only deliberately indifferent to them but is in fact actively

promoting them. This knowledge is further demonstrated by the fact that the Baker

mass arrest was discussed at a City Council meeting soon after it happened –

negating any possible claim of ignorance on behalf of the City.

62.

While the present case does not involve a pedestrian in the roadway charge it does involve a protest in opposition to Cop City much like the case of <u>Gadomski v. City of Atlanta</u> (Case 1:23-cv-04036-TWT) where this Court denied a motion to dismiss based on a final policy maker theory. It is no secret that the City of Atlanta itself is squarely on the side of building the training center as is evidenced by the City Council votes and City being actively engaged in litigation to prevent the issue from being placed on a referendum despite more than one hundred thousand signatures asking the City to do so. The City's Police department likewise has without exception acted to conduct arrests at Cop City protests where arrests are otherwise not conducted - as evidenced by several above listed examples. The present complaint alleges pretextual arrests based on very serious charges while most of the other violations cited involve pretextual arrests based on pedestrian in the roadway charges. This is a distinction without a difference. Every single instance of violation cited involves pretextual arrests of protesters made in retaliation for their first amendment protected activity. And a great majority of the examples listed involve first amendment protected activity related to the opposition

to building the police training facility. It is not only plausible – but it is a well known fact – worthy of judicial notice – that the City of Atlanta (as an entity – not just the Atlanta Police Department) has taken a clear stance on which side of this political debate it is on. The city of Atlanta is actively engaged in fighting the opposition to "Cop City." The City has fought and is still fighting against a referendum on the issue despite 116,000 signatures on a petition that demand the referendum to be had. The City has engaged in various tactics to prevent the referendum – including but not limited to ordinance amendments and litigation to stall and or prevent the vote. As a high ranking officer within the City of Atlanta Defendant Jessica Bruce (currently a Deputy Police Chief) is one of the main individuals charged with fighting the fight against the so called Cop City opponents. In an affidavit dated February 16, 2023 Jessica Bruce described surveillance she is conducting of the opponents of the "Cop City": "The Homeland Security Unit is part of the Special Enforcement Section that I command. The duties of the Homeland Security Unit include monitoring social media posts related to the City of Atlanta's Public Safety Training Facility." She further stated that: "By virtue of being the commander of the Special Enforcement Section, I am aware of

numerous incidents of property damage, vandalism, and violence related to the

development of City of Atlanta's Public Safety Training Facility." Jessica Bruce

then lists the protest that is the subject of this very complaint as one of the

incidents of property damage, vandalism, and violence related to the development

of City of Atlanta's Public Safety Training Facility as follows: "July 29 / Protest

and vandalism at Georgia State University / 7 arrested / Protest at a B&G

construction site (approximately 40 protestors)." As is evidenced from the above

allegations of the present complaint Jessica Bruce arrived at the site of the arrests

on July 29, 2022 as someone that is playing a leadership role in combatting the

opposition to Cop City, then urged GSU Officers to fabricate charges against the

arrestees, and after succeeding in this endeavor she listed the arrests as one of the

examples of "property damage, vandalism, and violence related to the development

of City of Atlanta's Public Safety Training Facility" in her February 16, 2023

affidavit. Rather than being a rouge officer – Jessica Bruce has on that day acted

under the direction of the City of Atlanta, the Chief of Police and the City

government in attempting to stamp out the opposition against Cop City.

63.

Finally – the fact that Major Jessica Bruce – one of the most high ranking officers in the City of Atlanta Police department was dispatched to a scene of an incident where nothing more than a few minutes long entry into a building by Cop City protesters was alleged – speaks for itself. The Chief of Police of the City of Atlanta knew what Defendant Bruce was doing. In fact this is what she was expected to do. In addition – the Chief of Police ratified Major Bruce's conduct.

**COUNT IV**
**O.C.G.A. § 51-7-40: Malicious Prosecution**
**(As to all Defendants except City of Atlanta)**

64.

Paragraphs 1 through 40 are hereby re-alleged as if fully pled herein.

65.

Defendant officers initiated a criminal prosecution against all Plaintiffs, and they knew or should have known that no arguable probable cause existed to believe that any of the Plaintiffs had violated any laws or committed any crime recognized

by law.

66.

Defendant officers initiated and maintained the arrest and prosecution of all Plaintiffs with malice, as interpreted under Georgia law. The prosecution was brought in bad faith and without a reasonable expectation of obtaining a valid conviction as all defendants knew that there was no probable cause for any of the charges – yet conspired to fabricate the charges because this will help Defendant Bruce and The City "tremendously" with "this group." And "with this group" they mean the opponents of the City of Atlanta's Public Safety Training Facility.

67.

This criminal prosecution has terminated (or is expected to terminate) favorably for all Plaintiffs.

68.

As a result of the arrest and prosecution, all Plaintiffs have suffered physical, emotional, mental and financial injury, entitling them to recover nominal, compensatory and punitive damages against Defendant officers for the loss of their rights under this claim, in an amount to be determined by the enlightened

conscience of a fair and impartial jury.

## COUNT V
### 42 U.S.C. § 1983: First Amendment Retaliation in violation of the First Amendment
### (As to all Defendants except City of Atlanta)

69.

Paragraphs 1 through 40 are hereby re-alleged as if fully pled herein.

70.

Defendants deliberately initiated and or caused arrest and prosecution against all Plaintiffs because Plaintiffs exercised their rights to free speech and participated in a protest. Plaintiffs were targeted for arrest because they were part of a protest. Plaintiffs would not have been arrested but for their exercise of their First amendment rights.

71.

Defendants' actions were meant to punish the Plaintiffs for their exercise of their First Amendment rights and to prevent them from further speaking and continuing to protest in the future.

72.

The intentional actions of Defendants in falsely accusing Plaintiffs of crimes interfered with Plaintiffs' right of freedom of speech and expression in violation of the First Amendment to the US Constitution.

73.

The law being clearly established in 2022 that an officer of the state cannot make false statements or make an arrest to retaliate against a person for their exercise of freedom of speech, Defendants are not entitled to qualified immunity.

74.

Plaintiffs allege that they were arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech or expression had not been arrested.

75.

Plaintiffs allege that no person has been arrested under the above described circumstances when they were not engaged in the type of protected speech Plaintiffs were engaged in.

76.

Had Plaintiffs not been protesting Defendant officers would not have

arrested them. This is evidenced by the common knowledge that officers typically

exercise their discretion not to arrest in cases of brief entry into a building even

when probable cause is present. Plaintiffs ask that the Court take judicial notice of

same or allow Plaintiffs to gather evidence of such typical exercise of discretion

during discovery. Plaintiffs allege that Defendant officers had no arguable probable

cause to arrest them for any crime and nothing in this complaint should be

construed as an admission or allegation that arguable probable cause existed for

any crime.


**COUNT VI**
**42 U.S.C. § 1983: Conspiracy to violate constitutional rights**
**(As to all Defendants)**

77.

Paragraphs 1 through 40 are hereby re-alleged as if fully pled herein.

78.

Defendant Jessica Bruce was dispatched to the scene as a high ranking

officer of the City of Atlanta Police Department and to speak on behalf of the City to the officers of the Georgia State University Police Department.

79.

Defendant Bruce urged other defendant officers to falsely charge protesters with crimes. Defendant Bruce conspired with all other defendants to illegally detain, arrest and falsely charge protesters with crimes they did not commit and to conceal said actions from the public.

80.

Defendant Fraser participated in the concealment aspect of the conspiracy by turning off his body worn camera when Defendant Bruce started talking about stretching charges against the protesters.

**DAMAGES**

81.

Paragraphs 1 through 80 are hereby re-alleged as if fully pled herein.

82.

As a direct and proximate result of the above described conduct of Defendants, Plaintiffs were unreasonably and unlawfully arrested and prosecuted

without probable cause and as a retaliation for exercising their First Amendment rights, were imprisoned and deprived of their liberty, were subjected to physical restraint, confinement, physical and mental suffering and emotional distress that is expected to continue into the future, and were forced to incur other economic and non-economic losses for which Defendants are liable to Plaintiffs in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

83.

The aforementioned misconduct of Defendants rose to such a level of bad faith, willfulness, and reckless disregard as to authorize the imposition of punitive damages against each one of them.

84.

Plaintiffs are also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 42 U.S.C. §1988.

**WHEREFORE**, Plaintiffs demand the following:

a) That this action be tried by a jury;

b) That judgment be entered in favor of each Plaintiff and against each Defendant for nominal, special, compensatory and punitive damages for each violation of the Plaintiffs' constitutional rights in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) That Plaintiffs be awarded attorney's fees and reasonable expenses of litigation;

d) That all costs of this action be taxed against Defendants; and

e) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 2nd day of December 2024.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange, Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com